UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ARETHA COOK                                                                                    PLAINTIFF

V.                                    CASE NO. 3:20-CV-86-BD

SOCIAL SECURITY ADMINISTRATION                                          DEFENDANT

**ORDER**

I. **Introduction:**

On September 15, 2017, Aretha Cook applied for disability benefits, alleging disability beginning on April 20, 2015. (Tr. at 15) Ms. Cook's claims were denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge (ALJ) denied Ms. Cook's application. (Tr. at 28) Ms. Cook requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision stands as the final decision of the Commissioner. Ms. Cook filed this case seeking judicial review of the decision denying her benefits.[1]

II. **The Commissioner's Decision:**

The ALJ found that Ms. Cook had not engaged in substantial gainful activity since the alleged onset date of April 20, 2015.[2]  (Tr. at 18) At step two of the five-step analysis,

---

[1] The parties consented to proceed before a magistrate judge. (Doc. No. 5)

[2] Ms. Cook continued to work after her alleged onset date, but the work did not rise to the level of substantial gainful activity. (Tr. at 18)

1

the ALJ found that Ms. Cook had the following severe impairments: degenerative disc disease, degenerative joint disease, obesity, ischemic heart disease, depression, anxiety, and intellectual disorder. *Id*.

After finding that Ms. Cook's impairments did not meet or equal a listed impairment (Tr. at 18), the ALJ determined that Ms. Cook had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with limitations. (Tr. at 21*)* She could only occasionally climb, balance, stoop, crouch, crawl, and kneel. *Id*. She could perform work where interpersonal contact is incidental to the work performed, with *incidental* meaning that interpersonal contact would require limited interaction, such as meeting and greeting the public, answering simple questions, accepting payment, and making change. *Id*. She could perform work where the complexity of tasks could be learned by demonstration or repetition within 30 days, with few variables, and little judgment required. *Id*. The supervision required would have to be simple, direct, and concrete*. Id*.

Based on this RFC and testimony from a Vocational Expert (VE), the ALJ determined that Ms. Cook was unable to perform any of her past relevant work. (Tr. at 26) Relying upon the VE's testimony, and after considering Ms. Cook's age, education, work experience and RFC, the ALJ found that Ms. Cook was capable of performing work in the national economy as addresser and document preparer. (Tr. at 27) Thus, the ALJ determined that Ms. Cook was not disabled. *Id.*

**III. <u>Discussion</u>:**

    A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

    B.   Ms. Cook's Arguments on Appeal

Ms. Cook maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues three points in her appeal: (1) the ALJ did not properly consider all of her impairments as step two; (2) the ALJ failed to fully develop the record; (3) the ALJ did not properly evaluate medical opinions; and (4) the ALJ failed to resolve conflicts between VE testimony and the *Dictionary of Occupational Titles* (DOT).

Ms. Cook treated her knee pain, back pain, hypertension, and mental impairments irregularly. Much of the record reflects emergency room (ER) visits rather than consistent specialized treatment. Ms. Cook weighed 290 pounds in August 2017 and weighed 338

<mark>3</mark>

pounds in May 2018. (Tr. at 689, 852). She gained weight despite her doctors' recommendations to improve her diet, lose weight, and exercise. (Tr. at 636, 702)

As for hypertension and ischemic heart disease, an ER doctor noted that Ms. Cook's sedentary lifestyle and continued daily smoking habit were serious risk factors that compromised her conditions. (Tr. at 702) Ms. Cook was referred for physical therapy, but admitted at the hearing that she had only begun that treatment a few months prior. (Tr. at 41) Moreover, Ms. Cook was noncompliant with treatment: she admitted that she did not take her blood pressure medication as prescribed; and she failed to follow up with recommended hypertension treatment. (Tr. at 479, 485-512). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of his alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). When Ms. Cook did go to the ER for hypertensive episodes, she responded well to treatment. (Tr. at 476-482) Ms. Cook said she felt better when she took her blood pressure medicine and had fewer headaches. (Tr. at 46, 482) Improvement in condition supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

An MRI of Ms. Cook's lumbar spine showed no disc herniation or stenosis; and a bilateral knee x-ray showed only mild arthritic changes. (Tr. at 463-466) An April 2016 clinical exam showed moderately limited lumbar range of motion, with no muscle spasm and negative straight-leg raises. (Tr. at 633-634) Objective tests showing mild-to-

moderate conditions do not support a finding of disability. *Masterson v. Barnhart*, 363 F.3d 731, 738-39 (8th Cir. 2004). Ms. Cook said that muscle relaxers helped for pain. (Tr. at 631) She said she did not walk with an assistive device. (Tr. at 41)

Ms. Cook conceded that she performed a wide range of daily activities. She attended church, visited with family, cooked simple meals, did some chores, shopped in stores, and played cards. (Tr. at 40-42, 300-304) Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995). In a function report, Ms. Cook reported that she was good with written and spoken instructions and could finish what she started. (Tr. at 300-305) She had generally normal mental status examinations, and she did not seek out specialized psychiatric care. (Tr. at 437, 633) Ms. Cook continued to work part-time through 2017. (Tr. at 260-263, 286-291)

Ms. Cook maintains that the ALJ failed to consider all of her impairments, particularly her hypertension and argues that the ALJ should have found her hypertension to be severe. The claimant has the burden of proving that an impairment is severe, which by definition significantly limits one or more basic work activities. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(a). In any event, once an ALJ proceeds past step two, the labeling of an impairment as severe or non-severe has no legal significance; the medical record as whole is the basis for the determinations at steps three and four. See 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling 96-8p, 1996 WL 374184 (the ALJ

will consider all medically determinable impairments, even those that are non-severe, when assessing residual functional capacity).

Ms. Cook did not follow her doctors' orders with respect to hypertension. She continued to smoke and did not take her medications as prescribed. She was able to perform a variety of daily activities. Her primary treatment for hypertension was at the ER, where she improved upon discharge. Ms. Cook has not shown that hypertension significantly limited her work activities, or that the ALJ's step-two analysis was insufficient. *See Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994)(ALJ properly considered the combined effects of impairments when the ALJ noted that the evidence as a whole did not show claimant's symptoms would preclude all work).

Ms. Cook next asserts that the ALJ did not properly develop the record because he did not give significant weight to any medical opinions; thus, additional opinions were required. While an ALJ has a duty to develop the record, this duty is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). The ALJ is responsible for assessing the medical evidence, and there is no requirement that an ALJ's decision be supported by a specific medical opinion. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-1093 (8th Cir. 2012).

As for evaluation of medical opinion evidence, Ms. Cook has not shown that the ALJ erred. On January 28, 2017, the Administration promulgated new regulations

governing how ALJs assess medical opinion evidence. The new rules focus on whether an opinion is persuasive, based on specific factors: supportability; consistency with the evidence; relationship with the claimant; provider specialization; and any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is persuasive if it is sufficiently relevant to, and consistent with, the medical evidence as a whole. *See Phillips v. Saul*, No 1:19-CV-00034-BD, at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his or her findings about an opinion's persuasiveness. *Id.*

Dr. Robert Giddings, M.D., whom Ms. Cook only saw a handful of times, filled out a medical source statement in March 2018. (Tr. at 841-847) In that statement, Dr. Giddings opined that Ms. Cook was unable to perform even sedentary work. *Id.* The opinion was on a short checkbox form. A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Dr. Giddings' restrictive statement included his opinion that Ms. Cook would need frequent rest periods, longer than normal breaks, and the ability to shift positions at will. This opinion was undermined by the benign objective medical evidence, Ms. Cook's failure to follow doctors' orders, and her improvement with treatment. The ALJ noted that the record did not support the significant limitations set out in Dr. Giddings' opinion. (Tr. at 25) The ALJ thoroughly discussed the medical evidence that served as a basis for his finding that Dr. Giddings' opinion was only partially persuasive.

The ALJ also considered an opinion from consultative psychiatric examiner Catherine Hubbard Adams, Ph.D. (Tr. at 825-832) Dr. Adams noted that Ms. Cook was open and cooperative with appropriate mood. *Id*. While Dr. Adams found that Ms. Cook might have had moderate-to-severe difficulty with attending and sustaining concentration and mild difficulty in coping with work demands and completing tasks in an acceptable timeframe, she found that the difficulties did not interfere with activities of daily living or social interactions. *Id*. The ALJ found Ms. Adams's opinion unpersuasive, noting Ms. Cook's relatively normal mental examination. (Tr. at 25) Indeed, Ms. Cook's mental status exams were largely normal, and she said that she could finish what she started and easily follow instructions.

The ALJ also considered state-agency reviewing experts, who found that Ms. Cook's mental impairments were non-severe. He found those opinions unpersuasive. (Tr. at 26) He clearly gave some credit to Ms. Cook's own testimony about mental limitations, because he found mental impairments at step two and assessed mental limitations in the RFC. (Tr. at 16-21) The Court finds that the ALJ properly evaluated the medical opinions. Moreover, the multiple medical opinions, paired with the clinical and objective findings and Ms. Cook's own testimony, provided a fully developed record.

Finally, Ms. Cook argues that the ALJ erred at step five. She contends that he failed to resolve multiple conflicts between the VE testimony and the DOT. An ALJ has an affirmative duty to ask about any possible conflict between the VE's testimony and the

8

DOT before relying on that testimony to support his findings. Soc. Sec. Ruling (SSR) 00-4p (2000), *2-4, 2000 SSR LEXIS 8. Next, an ALJ must explain in his decision how he resolved that conflict. *Id.*

The Defendant properly points out that there simply were no conflicts apparent at step five. The ALJ did not impose a sit/stand option in the hypothetical to the VE. This was also supported by Ms. Cook's ability to perform daily activities, her normal clinical exams, the lack of need for an assistive device, and her ability to work after the alleged onset date.

The ALJ also did not impose any limitation in Ms. Cook's concentration, persistence or pace; and Ms. Cook argues that limitations should have been included in hypothetical posed to the VE. The Commissioner may meet his burden at step five by eliciting testimony from a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). "A hypothetical question is properly formulated if it sets forth impairments 'supported by substantial evidence in the record and accepted as true by the ALJ.'" *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (*quoting Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The ALJ need not include limitations not borne out in the record. Ms. Cook herself indicated that she could focus, follow directions, and finish what she started. She did not demonstrate disabling mental

conditions; and the hypothetical and RFC properly accounted for any problems with mental function in a work setting.

Finally, Ms. Cook argues that the ALJ limited her to simple work, which does not correspond to the mental requirements of the jobs identified by the VE. The document preparer job requires level-3 reasoning, which means a worker can "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or from standardized situations." DOT, app. C., pt. III (1991 WL 688702 (4th ed. rev. 1991).

Level-3 reasoning work is not necessarily "complex"; Ms. Cook's RFC for work with incidental interpersonal contact with few variables and little judgment does not conflict with level-3 reasoning. *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). Moreover, the second job identified by the VE requires only level-2 reasoning: "carry[ing] out detailed but uninvolved written or oral instructions. . . ." *Id*. This sort of work would not exceed the RFC restrictions here, so there was no apparent conflict at step five.[3] *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)(rejecting argument that an RFC limiting a claimant to "carrying out simple job instructions" and performing

---

[3] Ms. Cook argues that the RFC should have directly tracked the DOT reasoning-level language and cites to *Gilbert v. Berryhill* in support. *Gilbert v. Berryhill*, 3:18-CV-00198-PSH (E.D. Ark. July 29, 2019). *Gilbert's* holding does not require that an RFC follow DOT language precisely. *Id*. at *4.

"simple, routine and repetitive work activity at the unskilled task level" was incompatible with jobs requiring level-2 reasoning).

## IV.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ did not err at step two or step five; he properly evaluated the medical opinions; and the record was fully developed. The finding that Ms. Cook was not disabled within the meaning of the Social Security Act must be, and hereby is, AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED, this 19th day of April, 2021.

_____
UNITED STATES MAGISTRATE JUDGE